UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 09-22815-COOKE/BANDSTRA

AUEISHUA BUCKNER and LESLIE HENDERSON
and GLAMOUR PHOTOGRAPHY & VIDEO, INC.,

     Plaintiffs,

vs.

LUTHER CAMPBELL,

     Defendant.
_____/

## DEFENDANT'S OPPOSITION TO MOTION FOR JUDGMENT
## AS A MATTER OF LAW AND FOR NEW TRIAL

Defendant Luther Campbell, by and through his undersigned counsel, hereby

responds to the Plaintiffs' Renewed Motion for Judgment as a Matter of Law or in

the Alternative Motion for New Trial ("Motion"). (DE 123) Both motions should be

denied on both procedural and substantive grounds.

**I.**

## BOTH MOTIONS SHOULD BE DENIED UNDER FED.R.CIV.P. 7(B)

Fed.R.Civ.P. 7(b)(1)(b) requires that all motions "state with particularity the

grounds for seeking the order." "The purpose of the particularity requirement in

Rule 7 is to afford notice of the grounds and prayer of the motion to both the court

and to the opposing party, providing that party with a meaningful opportunity to

respond and the court with enough information to process the motion correctly."

Registration Control Sys., Inc. v. Compusystems, Inc., 922 F.2d 805, 807 (Fed. Cir.

1990).

The Plaintiffs seek judgment as a matter of law or, in the alternative, a new trial, but they have not supplied the Court with a transcript of the trial.[1]  By failing to do so, the Plaintiffs have violated Rule 7(b) in that they have failed to "provid[e] the court with enough information to process [either] motion correctly." Compusystems, id. In effect, the Plaintiffs ask the Court to rely solely on its recollection of what occurred at the trial. This not only disserves the Court but also subjects Mr. Campbell to potential prejudice. The only reliable source of the "information [needed] to process [these] motion[s] correctly" is an official transcript of the trial.

Perhaps because this is such an obvious principle, we have not been able to find any cases expressly stating it. Nevertheless, the requirement of particularity in Rule 7(b)(1) has been read to mean that "[a] trial court is not required to 'parse through transcripts' in an effort to identify the grounds of a post-trial motion," Warren v. Thompson, 224 F.R.D. 236, 240 (D.D.C. 2004) aff'd sub nom. Warren v. Leavitt, 264 F. App'x. 9 (D.C. Cir. 2008). If a court is not required to search through a transcript looking for support for a post-trial motion, then, necessarily, it cannot be that a court can be expected to search through its memory or even its notes to determine what was said at the trial by witnesses, the lawyers, or even the court itself.  Thus, the Court, respectfully, should deny these motions with prejudice for

---

[1]     The Plaintiffs point to the "high cost" of ordering the transcript because of its "high cost," (DE 123, at 11 of 15 n.7) but do not explain why, even if the cost were prohibitive, this would somehow relieve them of the need to supply a transcript.

failure to comply with the common sense purpose of Rule 7(b).

Even if counsel's bare assertions of what occurred at trial are an acceptable substitute for a transcript, and even if their assertions are accurate, the motions simply do not suffice under Rules 50 and 59, respectively, as set forth below.

## II.

### THE MOTION FOR JUDGMENT AS A MATTER OF LAW SHOULD BE DENIED[2]

F.R.Civ.P. 50 governs motions for judgment as a matter of law: Rule 50(a) for motions made before the case is submitted to the jury, and Rule 50(b) for motions "renew[ed]" after the entry based on the jury verdict. "A motion under Rule 50(b) is not allowed unless the movant sought relief on similar grounds under Rule 50(a) before the case was submitted to the jury." Exxon Shipping Co. v. Baker, 554 U.S. 471, 526 n.5 (2008).[3]

The standard governing a motion under Fed.R.Civ.P. 50 is as follows:

---

[2]     To the extent relevant, Mr. Campbell incorporates by reference all arguments made on his motions for judgment as a matter of law, one made at the close of the Plaintiffs' case and one made after the close of evidence, and the memorandum of law in support of the latter.

[3]     The Plaintiffs have brought a "renewed" motion and assert that they made an oral motion at the close of the evidence on grounds similar to the motion that they now make. As noted, their failure to offer a transcript of the trial prevents the Court from reliably determining whether the grounds expressed in this post-trial motion are "similar" to those made in an earlier motion. Nevertheless, even assuming that the Plaintiffs' motion is identical to that presented at the close of the evidence, it falls far short of the substantive requirements for granting a motion for judgment as a matter of law.

> A court may grant a motion for judgment as a matter of law when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.' Fed.R.Civ.P. 50(a). The court should review all of the evidence in the record, draw all reasonable inferences in favor of the non-moving party, and disregard all evidence favorable to the moving party that the jury is not required to believe. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150-51, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Credence should also be given to 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.' *Id.* (internal quotations omitted). However, '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.' <u>Id</u>. at 150, 120 S.Ct. 2097.[4]

<u>Akouri v. State of Florida Dept. of Transp.</u>, 408 F.3d 1338, 1343 (11th Cir. 2005).[5]

It avails the movant nothing to show evidence in the record on which the jury could have reached a different conclusion than they did. Rather, the movant must show the complete opposite: the absence of <u>any</u> evidence on which a reasonable jury could find for the non-moving party. On both counts, there is no question but that there was sufficient evidence to support the jury verdict.

A.    <u>There Was Sufficient Evidence for the Jury Verdict on Count I.</u>

Count I was based on section 607.1421(4), Fla.Stat., which states, in pertinent

---

[4]    The standard is the same whether the motion is brought during the trial or after the jury verdict is rendered. "Regardless of timing, however, in deciding on a Rule 50 motion a district court's proper analysis is squarely and narrowly focused on the sufficiency of evidence." <u>Chaney v. City of Orlando</u>, 483 F.3d 1221, 1227 (11th Cir.2007) (renewed motion).

[5]    What constitutes a "legally sufficient evidentiary basis" (or "substantial evidence") has been described by the Eleventh Circuit as "evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might" rely on such evidence in reaching their verdict." <u>Lipphardt v. Durango Steakhouse of Brandon, Inc.</u>, 267 F.3d 1183, 1186 (11th Cir. 2001).

part:  "A director, officer, or agent of a corporation dissolved pursuant to this section, purporting to act on behalf of the corporation, is personally liable for the debts, obligations, and liabilities of the corporation arising from such action and incurred subsequent to the corporation's administrative dissolution only if he or she has actual notice of the administrative dissolution at the time such action is taken…"[6] Thus, as the jury instructions stated, the Plaintiffs needed to prove each of the following elements: (i) Mr. Campbell was operating Luke Records, Inc. (1986) when the events giving rise to the $400,000 default judgment occurred; (ii) at the time, that corporation was administratively dissolved; and (iii) at the time, Mr. Campbell had actual notice of the administrative dissolution.[7]

The jury could have ruled in Mr. Campbell's favor either because they concluded that Mr. Campbell was not operating Luke Records, Inc. (1986) or because they concluded that he was not on actual notice that this corporation had been administratively dissolved. Of course, if there was sufficient evidence to find for Mr. Campbell on either fact, the cause of action was not proven and the verdict

---

[6]     The Court struck Mr. Campbell's affirmative defense that the corporation was reinstated and the prior actions of the officers and directors were ratified, which, under the statute, absolves the officers and directors of any liability otherwise proven.

[7]     The jury verdict form, to which the Plaintiffs did not object, stated: "Did Defendant LUTHER CAMPBELL violate F.S. §607.1421 by claiming to act on behalf of the corporation, Luke Records, Inc., (1986) after the corporation's administrative dissolution for which LUTHER CAMPBELL is liable to the Plaintiffs for the amount of the judgments entered against the corporations in the United States District Court for the Eastern District of Louisiana?" (DE 121) The jury answered that question "no."

must be respected.  There was "sufficient evidence" in the record on which the jury could reasonably relied in reaching its verdict on Count I on either ground.

As to the issue of whether Mr. Campbell was operating Luke Records, Inc. (1986) when he helped create the DVD:

1.    Mr. Campbell testified[8] that he thought he was acting on behalf of Luke Records & Films, Inc. in connection with the making of the DVD.

2.    Luke Records & Films, Inc. was formed in October 2001. (Def.'s Ex. 12)

3.    Income from the sale of the DVD in question was shown on the tax returns of Luke Records & Films, Inc. (Def.'s Ex. 1 and testimony of Mr. Campbell and Makeda McClune)

4.    Mr. Campbell testified that he did not notice that a contract he signed with UrbanWorks Entertainment dated January 1, 2004 -- about a year after the events in question -- was signed in the name of Luke Records, Inc. (1986). (Pls' Ex. 6)

5.    Mr. Campbell testified that he relied on counsel to prepare proper contracts and that he focused on the business terms, not on such matters as the name of the company in whose name the contract was being signed.

---

[8]    Of course, Mr. Campbell cannot supply official record citations for testimony referred to in this memorandum. However, if the Court determines to consider the substance of this motion on the basis of Plaintiffs' bare references to purported testimony and events at the trial, Mr. Campbell has no alternative but to refer to testimony in his Memorandum. The better practice would be to deny the motions for failure to comply with Rule 7(b).

6.      Even if the January 1, 2004 contract actually pertained to sales of the DVD in question (despite being dated a year after the DVD was created), the definition of "producer" in the contract included any "affiliate" of Luke Records, Inc. (1986). (Pls' Ex. 6, p. 14 of 17, ¶ 13.15)

7.      "Affiliate" was defined in the contract to include an entity under common control with another entity. (Pls' Ex. 6, p. 13 of 17, ¶ 13.2)

8.      Mr. Campbell testified that Luke Records & Films, Inc. was an affiliate of Luke Records, Inc. (1986) because he controlled both companies.

9.      Makeda McClune, the former office manager of Luke Records & Films, Inc., testified that, at the time in question, Luke Records & Films, Inc. was the operating company and received the money from the sale of the DVD.

10.      Ms. McClune also testified that Mr. Campbell was not a detail-oriented person at work.

As to the issue of whether Mr. Campbell had actual notice of the administrative dissolution of Luke Records, Inc. (1986) at the time in question:

1.      Mr. Campbell testified that he did not know that the corporation had been administratively dissolved when he agreed to the placement of the photograph on the DVD, which he testified occurred in late 2002 or early 2003.

2.      Mr. Campbell testified that he did not even know the meaning of "administrative dissolution" until after this lawsuit was filed.

3.      No witness testified that the Secretary of State sent any notice to Luke Records, Inc. (1986) of the administrative dissolution.

4.     No witness testified as to the address to which any such notice, if sent, was sent.

5.     There was no evidence of the address for Luke Records, Inc. (1986) shown on the records of the Secretary of State of the State of Florida at the time of the administrative dissolution.

6.     There was no evidence that Luke Records, Inc. (1986) ever received any notice of its administrative dissolution.

The Plaintiffs ignores all of the above-cited evidence and merely makes the statement that "Luther Campbell further testified that the company did not exist following bankruptcy in 1996, thereby conclusively establishing the fact that he knew the company was dissolved." (DE 123, p. 5 of 15) The Plaintiffs did not ask for a jury instruction that the fact that the company had been liquidated in bankruptcy conclusively establishes that it would be administratively dissolved, nor did they ask for an instruction that Mr. Campbell would be conclusively presumed to have known that bankruptcy liquidation would be followed by administrative dissolution. Nor would any such instruction have been proper.  This was a jury question, because, as set forth below, it simply does not follow that because the company was liquidated in bankruptcy it would, for this reason, automatically be administratively dissolved.[9]

---

[9]     As noted above, the Court cannot be left to guess or recollect whether what the Plaintiffs say he testified is, or even purports to be, an exact quote or a paraphrase of his actual testimony.  Even if Mr. Campbell were to concede in this memorandum that this was his testimony (which concession is not made), his testimony would not carry the day for the Plaintiffs.

In the first place, contrary to the statement made by the Plaintiffs in their motion, Luke Records, Inc. (1986) continued to exist after its bankruptcy. The company was liquidated in the bankruptcy but did not cease to exist -- Mr. Campbell received the shares of the company. (Def. Ex. 10, at 11) Moreover, as a matter of law, the corporation continued to exist even when it was administratively dissolved. Under Florida law, the effect of an administrative dissolution is not to terminate the corporation's existence. As stated in section 607.1421(3), Fla.Stat., "[a] corporation administratively dissolved continues its corporate existence [for limited purposes]." And, there is no evidence in the record that it was voluntarily dissolved by the shareholders; even if that had occurred, however, under section 607.1405(1), Fla.Stat., the corporation continues in existence even after filing articles of dissolution until it has wound up its affairs.

Moreover, there is no necessary connection between a company's being liquidated in a bankruptcy (especially where, as here, the corporation's shares, even if then worthless, are expressly assigned to its shareholder) and its being administratively dissolved.  Florida law states the events that trigger an administrative dissolution under the Florida Business Corporations Act, and a bankruptcy liquidation is not one of them. See section 607.1420(1)(a) through (e), Fla. Stat. (listing of circumstances under which State "may commence" an administrative dissolution proceeding). Thus, there would be no basis upon which even an informed corporate official would conclude that simply because a corporation had been liquidated, it would be administratively dissolved.  Moreover,

the jury was entitled to believe Mr. Campbell when he testified that he not only did not know that the company had been administratively dissolved but had not even heard of that term or concept until this action was underway. Thus, the Plaintiffs are simply wrong that Mr. Campbell can be conclusively presumed to have known that because he knew the company was liquidated in bankruptcy, it later was administratively dissolved.

      B.      <u>There Was Sufficient Evidence for the Jury Verdict on Count II.</u>

In order to find Mr. Campbell liable on Count II, according to the jury instructions, the jury would have to conclude that he "willfully and recklessly incurred liability for copyright infringement." The jury was instructed that it "must decide whether Defendant, as an officer of Luke Records, Inc., (1986) Luke Records and Films and Luke Entertainment Corporations, violated Fla. Stat. §607.0831 because he committed acts which were reckless or in bad faith which led to the corporations incurring liability for copyright infringement suits for which Defendant is liable to the Plaintiffs for the amount of the judgments entered against the corporations in the United States District Court for the Eastern District of Louisiana." The jury was further instructed: "All issues regarding whether Luke Records, Inc. (1986), Luke Records & Films, Inc. and Luke Entertainment Corporation infringed upon Plaintiffs' copyright has been decided by the United States District Court for the Eastern District of Louisiana."

While Mr. Campbell objected to the jury instruction, this is what went to the jury:  Mr. Campbell would be liable if the jury found he willfully or recklessly

infringed the Plaintiffs' copyright.[10] In their Motion, the Plaintiffs now claim that there is <u>another</u> theory -- one never presented to the jury -- for imposing liability on Mr. Campbell under Count II. The Plaintiffs' new theory is that liability could arise from having recklessly or willfully allowed the three corporate defendants to default in federal court in Louisiana. It requires no citation to establish that a party who has lost a jury trial may not move for judgment as a matter of law on a theory that was not presented to the jury.

There was ample evidence that the jury could have concluded that Mr. Campbell did not recklessly or willfully infringed on the (non-existent) copyright of the Plaintiffs in the photograph:

1.       Mr. Campbell testified that he received written permission from the owners of the Boys Toyz calendar to have the photograph placed on the DVD cover.

2.       The agreement would have been entered into approximately eight years before the time of the trial, and Mr. Campbell testified that he could not find the agreement with the calendar owners.[11]

3.        The jury was entitled to draw the reasonable inference that one who

---

[10]     The Court overruled Mr. Campbell's objection that there is no evidence that the Plaintiffs ever registered their copyright, a prerequisite to a claim for copyright infringement, and, at the time in the Fifth Circuit, a prerequisite for the exercise of subject matter jurisdiction by the court entering the default judgments.

[11]     The Plaintiffs make the mistake of arguing that there was evidence (Mr. Campbell's responses to requests for admission) that the jury could have relied on in finding against Mr. Campbell. Even there, however, their argument is misleading, for they neglect to inform the Court that Mr. Campbell stated that he had a written agreement with the <u>calendar owners</u> to use the photograph. (Responses to Request Nos. 8 and 9)

had misappropriated a photograph would not openly and notoriously place the photograph on a DVD in which his company, as well as the name of the calendar, were prominently mentioned.

      4.     Mr. Campbell testified that during the promotional events for the calendar and the DVD, copies of the DVD, as well as of the calendar, were freely distributed, and that Plaintiff Buckner was present on those occasions.

      5.     The jury was entitled to draw the reasonable inference that one who had misappropriated a photograph would not openly and notoriously arrange to have distributed copies of the DVD bearing the photograph of an individual witnessing the distributions of the DVD.

In sum, the Plaintiffs' motion for judgment as a matter of law should be denied. There was ample evidence to support the jury's verdict on both counts that went to the jury.

## III.

### THE MOTION FOR NEW TRIAL SHOULD BE DENIED

In moving for a new trial, the Plaintiffs do not suggest that errors by the Court deprived them of a fair trial. They do not argue that evidence they sought to introduce was improperly excluded. They do not argue that the Court's jury instructions were legally incorrect. They do not argue that the jury verdict form was improper. Instead, they argue that "a new trial is warranted in this matter based upon the jury verdict being against the great weight of the evidence." And they argue that "significant misconduct throughout trial on the part of counsel for the

Defendant which greatly impaired Plaintiffs' ability to present their case to the jury and which resulted in jury confusion." (DE 123, at 11 of 15)  Neither argument holds water and both should be rejected by this Court. But before the Court reaches the motion on substantive grounds, it must decide whether the motion is procedurally defective.

A.    The Plaintiffs' Failure to Comply With Rule 7(b) and S.D.Fla.L.R. 7.1(a)(1) Should Result in Automatic Denial of the Motion.

Even aside from the procedural issue that pervades both the motion for judgment as a matter of law and the motion for new trial, the failure to supply a trial transcript, the Court should deny the motion for new trial for failure to cite a single legal authority in support of the motion.

The Plaintiffs do not even quote the language of Rule 59. They cite no case, law review or other commentary justifying their motion. On this ground alone, the Court should deny the motion for failure to comply with Rule 7(b).  Barcomb v. Fiserv Health, Inc., No. 8:08-CV-1790-T-23TGW, 2009 WL 2765468, at *4 (M.D. Fla. Aug. 27, 2009) ("the plaintiff s failure to address in his motion the five factors concerning entitlement to an attorney's fee contravenes the requirement in Rule 7(b)(1)(B), F.R .Civ.P., that the movant 'state with particularity' the grounds for the requested relief.").

Moreover, a motion without citation to authority also violates S.D.Fla. R. 7.1(a)(1), which requires that "[e]very motion when filed shall include or be accompanied by a memorandum of law citing supporting authorities." Compliance

with this rule is mandatory, and lack of compliance can result in denial of the

motion. <u>See</u> <u>Bd. of Trustees of Int'l Longshoremen's Ass'n v. Eller Mar. Services, LLC</u>,

08-22320-CIV-COOKE, 2009 WL 3584264, at *2 (S.D. Fla. Oct. 28, 2009) ("Eller & Co.

did not submit an accompanying 'memorandum of law citing supporting

authorities,' with its motion, as is required under Local Rule 7.1(A)(1). Eller & Co.

did not cite to a single case, or refer to any legal authority in its Motion for

Reconsideration. Additionally, Eller & Co. failed to include a statement that 'counsel

for the movant has conferred with [Plaintiffs] in a good faith effort to resolve the

issues raised in the motion and has been unable to do so,' as is required by Local

Rule 7.1(A)(3). These omissions, standing alone, supply adequate grounds to deny

the motion."). <u>Accord</u>, <u>Barcomb v. Fiserv Health, Inc.</u>, <u>supra</u> (local rule requiring

written memoranda with legal authority).

  B.  <u>The Motion Fails on Substantive Grounds.</u>

  Even if the Court determines not to deny the motion for new trial on the basis

of the foregoing procedural deficiencies, the motion should nevertheless be denied

on substantive grounds.

  This Court has recently explained the legal standard governing motions

under Rule 59:

> After a jury trial, and as an alternative to entering judgment as a
> matter of law, a court in its discretion "may grant a new trial on all or
> some of the issues ... for any reason for which a new trial has been
> granted in an action at law in federal court." Fed.R.Civ.P. 59;
> <u>Montgomery v. Noga</u>, 168 F.3d 1282, 1295 (11th Cir .1999). Reasons
> include a verdict that is against the weight of the evidence, damages
> that are excessive, or substantial errors in the admission or rejection
> of evidence or instructions to the jury. <u>See</u> <u>Montgomery Ward & Co. v.</u>

<u>Duncan</u>, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940). Determination of whether to grant a new trial is committed to the discretion of the trial court. <u>Montgomery v. Noga</u>, 168 F.3d at 1295.

<u>Galdames v. N & D Inv. Corp.</u>, No. 08-20472-CIV-COOKE, 2010 WL 1330000, at *4 (S.D. Fla. Mar. 29, 2010).

As noted, the Plaintiffs have moved for a new trial on two grounds: that the jury verdict was against the greater weight of the evidence, and that Mr. Campbell's trial lawyer greatly impaired their ability to try their case, resulting in jury confusion. These issues will be discussed in turn.

      1.    <u>The Jury Verdict Was Not Against the Great Weight of the Evidence.</u>

A new trial may not be granted on the purported incorrectness of the jury verdict "unless the trial judge concludes that the jury's verdict is against the great weight, not merely the greater weight, of the evidence. This standard embodies a concern that the jury's verdict should not lightly be disregarded." <u>J & H Auto Trim Co., Inc. v. Bellefonte Ins. Co.</u>, 677 F.2d 1365, 1373 (11th Cir. 1982) (citations omitted).  Grants of new trials on evidentiary grounds are subject to "extremely stringent" review on appeal, such that "[w]hile is within a district court's discretion to grant a new trial if it finds a jury's verdict is against the great, not merely the greater weight of the evidence, [the appellate court's] application of this more rigorous standard of review ensures the district court does not simply substitute its own credibility choices and inferences for the reasonable choices and inferences made by the jury." <u>Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.</u>, 571 F.3d 1143, 1145 (11th Cir. 2009) (citation and internal quotation marks omitted).

Mr. Campbell incorporates his argument with reference to the sufficiency of the evidence in response to the Plaintiffs' motion for judgment as a matter of law. There is no basis whatsoever for this motion.

    2.    <u>The Plaintiffs Are Not Entitled to a New Trial on their Theory that Mr. Campbell's Lawyer Prevented Them from Trying Their Case</u>.

The Plaintiffs argue that counsel for Mr. Campbell's conduct was so egregious that it resulted in a denial of their right to a fair trial. It is sometimes challenging to rebut a novel argument in a motion when the movant fails to submit a single shred of authority in support of the argument. Here, because the territory of Rule 59 and its common law progeny is so well trod, there is no difficulty in responding to this absurd and fatuous argument.

Of course, not only do the Plaintiffs not offer any legal authority in support of their argument, but also they do not offer a single citation to the trial record in support of their argument. Given that they argue that the incidents of alleged misconduct were so frequent that they could not even list them all, the lack of a trial record makes it impossible for the Court to determine (a) that the Plaintiffs accurately described what occurred, (b) whether the Plaintiffs' counsel objected, (c) how the Court ruled, and (d) the context in which the alleged misconduct occurred.

In short, without a transcript, the Court will have no way to determine what occurred and the likelihood of an adverse effect on the ability of the jury to hear the evidence and deliberate fairly. But that is precisely the inquiry that Rule 59(a) demands in determining a motion for a new trial because of alleged attorney

misconduct. In assessing the effect of improper conduct by counsel, the Court must examine "the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case, and the verdict itself." Puerto Rico Aqueduct & Sewer Auth. v. Constructora Lluch, Inc., 169 F.3d 68, 82 (1st Cir. 1999). See Christopher v. Florida, 449 F.3d 1360, 1370 (11th Cir. 2006) (citing Constructora in context of allegedly improper closing argument) (Barkett, J., dissenting). The ultimate issue is whether "there is a reasonable probability[] that improper arguments effectively subverted the jury's reason or ... its commitment to decide the issues on the evidence received and the law as given it by the trial court." Verizon Services Corp. v. Cox Fibernet Virginia, Inc., 602 F.3d 1325, 1335 (Fed. Cir. 2010) (citation and quotation marks omitted).

Even assuming that the alleged events occurred exactly as stated by the Plaintiffs -- an assumption that, absent a transcript, any trial court, not to mention an appellate court, would lack a proper basis for entertaining -- the Plaintiffs' allegations fall far short of alleging the kind of misconduct and the likely effect thereof on the jury to justify the granting of this motion.

The part of the trial that most frequently invokes the drastic result of a new trial is closing argument. This is because of the closeness in time between allegedly prejudicial statements and the jury's deliberations. The Plaintiffs do not allege that Mr. Campbell's counsel engaged in any misconduct in his closing argument.

Nor is there any suggestion that, at other times in the trial, Mr. Campbell's attorney made statements or arguments to the jury that mischaracterized the evidence, relied on evidence that had been stricken, mischaracterized the law, appealed to their passion, or invoked the golden rule.

The bulk of the alleged instances of attorney misconduct amount, at most, to zealous advocacy. True, both of Mr. Campbell's counsel vigorously objected to many of the Court's rulings on admissibility and other issues of law, and there were sidebar conferences, but there is no case of which we are aware that has sanctioned the award of a new trial based on winning counsel's frequent objections to the trial judge's rulings or for asking for sidebar conferences. No party's counsel has the power to require a sidebar conference; the trial either grants or denies a request for a sidebar. Moreover, many objections to the Court's rulings were heard not at sidebar but totally out of the presence of the jury. Those could not possibly have resulted in the dire results Plaintiffs claim occurred.

If the Plaintiffs' motion required a new trial, the party on whose behalf objections were made at trial would be the one suffering a miscarriage of justice. It would create an unmanageable and unfair situation in which a trial lawyer faced with rulings or evidence proffers with with he or she took exception to "hold his fire" lest it later be ruled that, whether or not his objections were meritorious, the trial court could order a new trial because there were "too many" such objections. To state the proposition is to demonstrate its wrongheadedness.

The Plaintiffs even go so far as to argue that Mr. Campbell's counsel "tried to cause a mistrial by referencing matters deemed inadmissible by the Court." (DE 123, at 12 of 15) The undersigned counsel cannot even determine from this vague allegation what portion of the trial the Plaintiffs are citing. Even if this Court believes it understands to what actual incident, if any, the Plaintiffs refer, it is notable that the Plaintiffs make no attempt to suggest that this alleged incident actually prejudiced them.[12] But a motion for a new trial requires a showing of substantial prejudice; mere descriptions of alleged wrongdoing do not suffice. E.g., Cabrera v. Boto Co., Ltd., 805-CV-2209-T-26TGW, 2007 WL 3333479, at *3 (M.D. Fla. Nov. 7, 2007) (citing Peat, Inc. v. Vanguard Research, Inc., 378 F.3d 1154, 1162 (11th Cir.2004).

The Plaintiffs and their counsel are understandably disappointed with the results of the trial, but they are not entitled to conjure up excuses for why they failed to prevail. Nothing occurred in the trial that resulted in a miscarriage of justice. They do not argue that the Court made errors that deprived them of their right to a fair trial or resulted in a miscarriage of justice. They have not shown that there was insufficient evidence to support the jury verdict. They do not point to a single instance in which opposing counsel misled the jury, falsely cited the facts or the law,

---

[12]     The allegation itself is expressly denied. Nevertheless, one would hope that responsible counsel would desist from imputing such an improper motive to opposing counsel in the absence of overwhelmingly strong evidence of malign intent. None exists here.

or engaged in any conduct that could possibly be labeled as the kind of misconduct that can justify a new trial.

Instead, the jury listened carefully throughout the trial, asked two questions during their deliberations, and returned a unanimous verdict in Mr. Campbell's favor after those questions were asked. In seeking a new trial, the Plaintiffs are asking the Court to sanction a miscarriage of justice and to abuse its discretion.

WHEREFORE, Defendant Luther Campbell respectfully requests that this Court deny the motions for judgment as a matter of law and for a new trial.

January 18, 2011

Respectfully submitted,

THE BRODSKY LAW FIRM
66 West Flagler Street, Ninth Floor
Miami, Florida 33130
Tel.:   786-220-3328
Fax:    866-564-8231
rbrodsky@thebrodskylawfirm.com

*/s/ Richard E. Brodsky*

By:_____
Richard E. Brodsky
FBN 322520
Attorney for Defendant

Christopher E. Benjamin
THE BARRISTER FIRM
Harbour Centre
18851 NE 29th Avenue
Suite 700, PMB 168
Aventura, Florida 33180
FBN 00561029
Co-Counsel for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing:

Donald F. de Boisblanc, Jr.
Jerry R. Smith, Jr.
de Boisblanc & de Boisblanc
410 S. Rampart Street
New Orleans, Louisiana 70112

Christopher E. Benjamin
THE BARRISTER FIRM
Harbour Centre
18851 NE 29th Avenue
Suite 700, PMB 168
Aventura, Florida 33180

Co-Counsel for Defendant

Michael C. Black
Kate S. Goodsell
Cassidy & Black, P.A.
7700 North Kendall Drive, Suite 505
Miami, Florida 33156

Attorneys for Plaintiffs

*/s/ Richard E. Brodsky*
_____
Richard E. Brodsky